STATE OF WISCONSIN          CIRCUIT COURT          DANE COUNTY
                              BRANCH 8

In re the dissolved marriage of:

Luanne M. Kalscheuer,

                                           Case No. 13 FA 1865

                Joint Petitioner-Wife,

-and-                                                      **FILED**

Michael L. Kalscheuer,                                    JUL 7   2015

                Joint Petitioner-Husband.          DANE COUNTY CIRCUIT COURT

## RESPONDENT'S AFFIDAVIT IN SUPPORT OF
## MOTION TO MODIFY MAINTENANCE

STATE OF WISCONSIN     )
                       ) ss
DANE COUNTY            )

Michael L. Kalscheuer, being sworn states:

1. I am the Respondent in the above-entitled action.

2. A divorce was granted on January 13, 2014, and the Fir
   and Judgment of Divorce was signed on January 16, 20

3. At the time of the divorce I was working two jobs. I w
   also worked at Sears some weeknights and most Saturd

4. I was ordered to pay the Petitioner maintenance in the a

5. Since the divorce was granted my income has decreased. I am still working at both GE
   Health and at Sears. My hours at Sears have been significantly cut and I am only scheduled
   to work on Saturdays. This has resulted in a significant decrease in my income.

6. In 2014 my gross income from Sears was approximately $16,500.00. As of my first pay
   period in April of 2015 I had only grossed approximately $2,000.00 for my employment at
   Sears.

7. My income from GE Health has not changed.

8. Since the divorce I have made maintenance payments even when I was unable to afford a place for myself to live.

9. As a result of the above circumstances I do not have sufficient funds to continue to make the monthly maintenance payment of $2,500 and support myself.

10. The Petitioner has access to significant assets that were not subject to division in the divorce. In approximately 2011 she received inheritance that was worth about $500,000.00. I believe her access to these funds should be considered in setting the monthly maintenance payment.

11. I respectfully request that the Court grant the Motion for Modification of Maintenance:

    a. Consider the new net income for both parties;

    b. Consider all sources of income available to both parties;

    c. Modify or terminate the court ordered maintenance payr

Michael L. Kal

ASHLEY A. RENZ
NOTARY
PUBLIC
STATE OF WISCONSIN

THIS IS AN AUTHENTICATED COPY OF THE
ORIGINAL DOCUMENT FILED WITH THE DANE
COUNTY CLERK OF CIRCUIT COURT.

CARLO ESQUEDA
CLERK OF CIRCUIT COURT

STATE OF WISCONSIN          CIRCUIT COURT          DANE COUNTY
                                BRANCH 8

*4 year, midua S. gal*

In Re the Marriage of:          FILED

LUANNE M. KALSCHEUER,          SEP 2 1 2015
1805 Eggum Road                          **Qualified Domestic Relations Order**
Mount Horeb, Wisconsin 53572-3614 DANE COUNTY CIRCUIT COURT

          **Joint Petitioner-Wife,**

and

                                        Case No. 13 FA 1865
**MICHAEL L. KALSCHEUER ,**             Code: 40101
5014 Piccadilly Drive
Madison, Wisconsin  53714

          **Joint Petitioner-Husband.**

WHEREAS:

The parties to this action have entered into a *Marital Settlement Agreement* whereby **Luanne M. Kalscheuer** and **Michael L. Kalscheuer** agreed to the division of marital property and assets between them pursuant to this action. The Court incorporated the *Marital Settlement Agreement* into its *Findings of Facts, Conclusions of Law and Judgment of Divorce* granted January 13, 2014. This order being necessary to effectuate the terms of such *Judgment*:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. The Court intends this order to be a Qualified Domestic Relations Order ("QDRO") within the meaning of §401(a)(13) and §414(p) of the Internal Revenue Code of 1986 ("Code"), and §206(d)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended. The Court enters this QDRO pursuant to its authority under Chapter 767 of the Wisconsin Statutes, a state domestic relations law.

2. This order creates and recognizes the existence of the Alternate Payee's right to receive a portion of the benefits payable with respect to the Participant under an employer-sponsored defined contribution plan that is qualified under §401 of the Code, as amended, and ERISA, as amended. It is the intent of the Court that the provisions of this order operate as an effective assignment for the Alternate Payee's interest in the Retirement Income Plan for Bargaining Unit Employees of Datex-Ohmeda, Inc., set forth below, under both state and federal law.

3. This QDRO applies to the **Retirement Income Plan for Bargaining Unit Employees of Datex-Ohmeda, Inc.** ("Pension Plan"). The "Plan Administrator" is GE Healthcare. GE Healthcare has contracted with Hewitt Associates LLC to establish procedures and administer QDROs, at this

address: Affiliate Pension Plan Center, Qualified Order Center, P.O. Box 1433, Lincolnshire, IL., 60069-1433. The Plan Administrator may delegate its responsibilities to an authorized representative. To the extent it does so, references to the Plan Administrator shall instead refer to the authorized representative. **Michael L. Kalscheuer** ("Participant") is a participant in the Pension Plan. **Luanne M. Kalscheuer** ("Alternate Payee"), the spouse/former spouse of the Participant, is the alternate payee for purposes of this QDRO. Further, any successor plan to the Pension Plan or any other plan(s), to which liability for provision of the Participant's benefits described below is incurred, shall also be subject to the terms of this QDRO. Any changes in Plan Administrator, Plan sponsor, or name of the Pension Plan shall not affect Alternate Payee's rights under this QDRO.

4. The Participant's name, social security number, date of birth and mailing address are:

> **Michael L. Kalscheuer**
> SSN: See Addendum
> Date of Birth: August 12, 1956
> Address: 5014 Piccadilly Drive, Madison, Wisconsin, 53714

5. The Alternate Payee's name, social security number, date of birth and mailing address are:

> **Luanne M. Kalscheuer**
> SSN: See Addendum
> Date of Birth: March 10, 1958
> Address: 1805 Eggum Road, Mount Horeb, Wisconsin, 53572-3614

The Alternate Payee shall have the duty to notify the Plan Administrator in writing of any changes in her mailing address subsequent to the entry of this QDRO.

6. Definitions. For the purposes of this QDRO, the following terms, when used with initial capital letters, shall have the following meanings:

(a) Accrued Benefit - The Participant's accrued benefit under the Pension Plan earned as of the Determination Date as if he terminated employment on the Determination Date and began receiving a distribution at his normal retirement age (as defined in the Pension Plan) or if the Participant has then attained normal retirement age, the Determination Date.

(b) Applicable Percentage - Fifty percent (50%).

(c) Determination Date - January 13, 2014.

7. Benefit Payable to the Alternate Payee. This QDRO assigns to the Alternate Payee an amount equal to the Applicable Percentage of the value of the Participant's Accrued Benefit as of the Determination Date. Any actuarial adjustment that might be necessary to base the Alternate Payee's benefit on the Alternate Payee's lifetime will be applied to the Alternate Payee's benefit. Further, early commencement reductions shall be made as necessary to reflect commencement of the Alternate

2

Payee's benefit prior to the Participant's normal retirement age or prior to the commencement of benefit payments to the Participant. If such reductions are required, they shall be determined on the basis of the Pension Plan's actuarial assumptions and not on the basis of any subsidized early retirement factors contained in the Pension Plan.

Except as provided below, the Alternate Payee shall have no right to any other increase in the Participant's benefit under the Pension Plan caused by service, earnings, separation programs, or Pension Plan amendments. Neither shall the Alternate Payee have any right to the portion of the Participant's retirement benefit under the Pension Plan that is not assigned in this QDRO.

- If the Participant retires prior to his normal retirement date and is eligible to begin receiving subsidized early retirement pension benefits under the Pension Plan, after the Participant retires, the amount of any benefit payment to the Alternate Payee **will be** increased by a proportionate share of any such early retirement subsidy.
- If the Pension Plan pays a cost-of-living adjustment (COLA) increase, post retirement benefit, or any other ad hoc increase to the Participant, the amount of any benefit payment to the Alternate Payee **will be** increased in proportion to the Alternate Payee's share of the Participant's benefit.

8. Form and Commencement of Payment. Except as otherwise stated, the amount payable to the Alternate Payee in accordance with this QDRO shall be paid to the Alternate Payee in any form available to an alternate payee in accordance with the provisions of the Pension Plan. However, the Alternate Payee's benefits may not be paid as a joint and survivor annuity naming the Alternate Payee's subsequent spouse as the survivor. The Alternate Payee may begin receiving her benefit payments on the later of the Participant's earliest retirement date under the Pension Plan or the date the Alternate Payee applies for her benefits in the manner prescribed by the Plan Administrator. If the Pension Plan so provides, the Alternate Payee may elect to receive her benefits at an earlier date allowed by the Pension Plan. In no event can the Alternate Payee defer commencement of benefits later than the Participant's actual commencement date.

9. Death Procedures. This section provides the Alternate Payee with a monthly benefit from the Pension Plan that does not change upon the Participant's death. The Alternate Payee will receive the benefit awarded under this QDRO regardless of when the Participant dies. If the Participant dies before benefit payments to either the Participant or the Alternate Payee begin, the benefit amount payable to the Alternate Payee will be the same as the amount awarded in Section 7 and will be paid from the Participant's preretirement surviving spouse benefit. If the Alternate Payee predeceases the Participant prior to the commencement of benefit payments to the Alternate Payee, the benefit otherwise payable to the Alternate Payee reverts to the Participant.

10. Tax Consequences. For purposes of §§402 and 72 of the Code, any alternate payee who is the spouse or former spouse of the Participant shall be treated as the distributee of any distributions or payments made to the Alternate Payee under the terms of the QDRO and, as such, will be responsible for the payment of all state and federal income taxes on the benefit awarded to and paid to

3

the Alternate Payee under this QDRO. The Alternate Payee assumes sole responsibility for, and shall indemnify and hold the Participant harmless with respect to, all local, state, and federal taxes that are payable in connection with all amounts assigned and paid to the Alternate Payee under this QDRO.

11. Effect of Plan Termination. If the Pension Plan is terminated, whether on a voluntary or involuntary basis, and the Participant's benefits become guaranteed by the Pension Benefit Guaranty Corporation ("PBGC"), the Alternate Payee's benefits, as stipulated herein, will also be guaranteed to the same extent in accordance with the Pension Plan's termination rules and in the same ratio as the Participant's benefits are guaranteed by the PBGC.

12. Savings Clause. Pursuant to §414(p)(3) of the Code and as except as provided by §414(p)(4), this Order is not intended, and shall not be construed in such a manner as to require the Pension Plan:

(a) to provide any type or form of benefit, or any option the Pension Plan does not otherwise provide.

(b) to provide increased benefits determined on the basis of actuarial value.

(c) to pay any benefits to the Alternate Payee which another order previously determined to be a qualified domestic relations order requires the Pension Plan to pay to another alternate payee.

13. The Alternate Payee shall file all elections, applications and forms required to receive the benefit awarded to the Alternate Payee. The Participant and the Alternate Payee shall cooperate with the Plan Administrator and each other in executing such documents and taking all necessary and required actions for the Pension Plan's trustee to pay the benefit awarded to the Alternate Payee.

14. If the Pension Plan inadvertently pays to the Participant any benefit that is assigned to the Alternate Payee pursuant to this QDRO, the Participant will immediately reimburse the Pension Plan to the extent that the Participant has received such benefit payments and shall forthwith pay such amounts so received to the Pension Plan within ten (10) days of receipt. If the Pension Plan inadvertently pays to the Alternate Payee any benefit that is actually payable to the Participant, the Alternate Payee must make immediate reimbursement. The Alternate Payee must reimburse the Pension Plan to the extent she has received such benefit payments and shall forthwith pay such amounts so received to the Pension Plan within ten (10) days of receipt.

15. The Pension Plan shall treat this QDRO in accordance with Code §414(p)(7). While the Pension Plan is determining whether this order is a qualified domestic relations order, the Plan Administrator shall separately account for the amounts which would have been payable to the Alternate Payee while the Pension Plan is determining the qualified status of this QDRO.

16. The Plan Administrator promptly shall notify the Participant and the Alternate Payee of the receipt of this QDRO and shall notify the Participant and the Alternate Payee of the Pension Plan's

4

procedures for determining the qualified status of this QDRO. The Pension Plan Administrator shall determine the qualified status of the QDRO and shall notify the Participant and the Alternate Payee of the determination within a reasonable period of time after receipt of this QDRO.

17. The Court retains jurisdiction to amend this QDRO for the purpose of establishing or maintaining its qualification as a Qualified Domestic Relations Order under the Code and ERISA; provided that no such amendment shall require the Pension Plan to provide any type or form of benefit, or any option, not otherwise provided under the Pension Plan, and further provided that no such amendment or the right of the Court to amend will invalidate this QDRO as "qualified" under the Code and ERISA. The Court further retains jurisdiction to supervise and enforce the payment of benefits, as provided herein, making any and all necessary modifications hereto to reasonably insure that the Alternate Payee receives full payment of the benefits assigned to her by the terms of this QDRO, subject to the requirements of the Code and ERISA. The Court's reservation of jurisdiction shall be liberally construed to effect the provisions of this QDRO and to resolve any disputes that may arise among the parties and the Plan Administrator concerning benefit payments or any other aspect of this QDRO. If any portion of this QDRO is rendered invalid, illegal, unconstitutional or otherwise unenforceable, the Court reserves jurisdiction to make an appropriate adjustment to effectuate the intent of the parties.

18. The Plan Administrator will send copies of notices to the attorney representing the Participant or the Alternate Payee provided the Plan Administrator knows a party is represented and has the address for the party's attorney.

19. A certified copy of this QDRO shall be served upon the Plan Administrator by the Alternate Payee, and the Participant shall be simultaneously furnished with evidence of such delivery.

This QDRO shall remain in effect until further order of the Court.

Dated this 25th day of ___Sept.___, 2014.

BY THE COURT

Honorable Frank D. Remington
Dane County Circuit Court Judge
Branch 8

Approved:

**Luanne M. Kalscheuer,** Joint Petitioner-
Alternate Payee

**Michael L. Kalscheuer,** Joint Petitioner-
Participant

5

Case 2:18-cv-01463-JPS   Filed 09/18/18   Page 7 of 33   Document 1-4

Date: _8-20-14_          Date: _____

**Attorney for Joint Petitioner-Alternate Payee**
Attorney Marilyn A. Dreger
Dreger Law Office
200 W. Verona Avenue
Verona, WI 53593-1316


*This instrument was drafted by:*
*Attorney Karen K. Gruenisen*
*GRUENISEN LAW OFFICE, S.C.*
*P.O. Box 46572*
*Madison, WI 53744-6572*

6

STATE OF WISCONSIN        CIRCUIT COURT        DANE COUNTY

| | |
|---|---|
| LUANNE M. KALSCHEUER, | **AFFIDAVIT IN SUPPORT OF ORDER TO SHOW CAUSE FOR CONTEMPT AND FOR OTHER RELIEF** |
| Joint Petitioner-Wife, | |
| and | |
| **MICHAEL L. KALSCHEUER,** | |
| Joint Petitioner-Husband. | Case No. 13 FA 1865 |

STATE OF WISCONSIN  )
                    ) ss
COUNTY OF DANE      )

Luanne Kalscheuer, being first duly sworn on oath, deposes and says:

1.    I am the Joint Petitioner-Wife in the above-entitled matter in which a Judgment of Divorce was granted on January 13, 2014.

2.    The Marital Settlement Agreement made a part of said Judgment of Divorce required Michael Kalscheuer to pay the amount of $2,500 per month in maintenance commencing with his first payday after the Court hearing granting the divorce.

3.    Subsequent to the Judgment of Divorce, Michael Kalscheuer made sporadic maintenance payments by depositing funds into the parties' joint account, which I then utilized. Annexed hereto as Exhibit A is my calculation of the amount owed to me for the maintenance contribution. Commencing May 1, 2015, Michael Kalscheuer started paying $451.48 per week as set forth in Exhibit A. However, $2,500 per month should result in a payment of $576.92 per week. Therefore, for the period from January 13, 2014, through September 26, 2015, he owes $13,668. ?
*thos $13,668.00 was actual almost $15,000.00 in back pay*
*see Bank Deposits —*

4.    I signed a Stipulation and Order for Amendment of Judgment on December 5, 2014, which awarded all of Michael Kalscheuer's retirement accounts to him, as opposed to the Judgment of Divorce which awarded half of them to me. I was not represented by an attorney at that time and I signed said document because I was afraid for my physical safety and therefore under duress. The result of that Stipulation is that I will not receive any of the substantial assets of the marital estate, which is obviously inequitable. I am therefore asking the Court to vacate said Stipulation and Order and restore the provisions of the Judgment of Divorce herein.

5. I have incurred attorney's fees as a result of Michael Kalscheuer's failure to comply with the Judgment of Divorce and therefore said fees should be paid by him.

6. This Affidavit is made in support of the Order to Show Cause for Contempt annexed hereto.

Dated this 24 day of September 2015.

_____
Luanne Kalscheuer
Joint Petitioner-Wife

Subscribed and sworn to before me this 24th day of September, 2015.

_____
John P. Louderman III
Notary Public, Wisconsin
My Commission is permanent.

**LUANNE M. KALSCHEUER,**

Joint Petitioner-Wife,

and

**MICHAEL L. KALSCHEUER,**

Joint Petitioner-Husband.

**ORDER TO SHOW CAUSE**
**FOR CONTEMPT AND FOR**
**OTHER RELIEF**

**FILED**

OCT - 2 2015

DANE COUNTY CIRCUIT COURT

Case No. 13 FA 1865

Upon the attached Affidavit and on motion of the attorney for the Joint Petitioner-Wife and upon the papers heretofore filed in the above-entitled action.

IT IS HEREBY ORDERED that the above named Joint Petitioner-Husband, Michael Kalscheuer, show cause, in person, before the Honorable Frank D. Remington in and for Dane County, Wisconsin, in his courtroom on the 4th Floor of the Dane County Courthouse, 215 S. Hamilton Street, Madison, Wisconsin, on ___Thursday___, the ___29th___ day of __October__, 2015, at _9:00_ a.m., or as soon thereafter as counsel can be heard, why the following relief should not be granted.

1.    Finding Michael Kalscheuer in contempt of court for his failure to pay maintenance as required by the Judgment of Divorce herein and sanctioning him appropriately.

2.    Vacating the Stipulation and Order for Amendment to Judgment entered by the Court on December 16, 2014, for the reasons set forth in the Affidavit annexed hereto.

3.    For a contribution to the attorneys fees, costs and disbursements incurred by Luanne Kalscheuer as a result of this Order to Show Cause.

STATE OF WISCONSIN            CIRCUIT COURT            DANE COUNTY
                                BRANCH 8

In re the marriage of:

LUANNE M. KALSCHEUER,
                                        Case No. 13 FA 1865
                Petitioner

-and-

MICHAEL L. KALSCHEUER,

                Respondent

---

## STIPULATION AND ORDER FOR AMENDMENT TO JUDGMENT

---

This Stipulation is by and between the parties, Petitioner, Luanne Kalscheuer ("Luanne"), and Respondent, Michael Kalscheuer ("Michael"). The following terms and conditions shall be entered as a Stipulation and Order for Amendment to the Judgment of Divorce.

The Findings of Fact, Conclusions of Law, and Judgment of Divorce in the above referenced case incorporate all the terms of the parties' Marital Settlement Agreement. As such, as part of the final orders, it was ordered that Luanne would receive one half of Michael's GE 401(k), after deducting the balance of a loan thereon; one half of Michael's GE pension plan; and one half of Michael's IRA account.

The parties hereby agree to modify the provisions of the order regarding the division of retirement assets, as follows: Luanne and Michael agree that Michael may retain 100% of his 401(k), pension plan, and IRA account in his name. It is further agreed that Michael will designate Luanne as a beneficiary on the 401(k) account, in the event of his death.

All other terms of the Judgment of Divorce not inconsistent with this Stipulation and Order for Amendment to Judgment remain in full force and effect and are not modified by this agreement.

So Stipulated:

Dated: ~~November~~ December 5, 2014            Dated: ~~November~~ December 10, 2014


_Luanne Kalscheuer_                            _Michael Kalscheuer_
Luanne Kalscheuer                              Michael Kalscheuer

_Exhibit 1_

## ORDER

BASED UPON the foregoing Stipulation of the parties,

**IT IS HEREBY ORDERED** that the above terms and provisions be adopted as an Amendment to the Findings of Fact, Conclusions of Law, and Judgment of Divorce signed January 16, 2014, without further notice or hearing.

Dated: _December 16, 2014_

BY THE COURT:

_Frank D Remington_

Hon. Frank D. Remington, Circuit Court Judge

Drafted by:
Ginger L. Murray
WI BAR 1028352
YOUR FAMILY LAW CENTER, S.C.
P.O. Box 1230
Madison, WI 53701
(608)469-1797



```
1    STATE OF WISCONSIN      CIRCUIT COURT          DANE COUNTY

2    *      *      *      *      *      *      *      *      *      *      *      *
     In RE the Marriage of:           )
3    LUANNE KALSCHEUER                 )
                                       )
4                   Petitioner,        )
     and                               )      Case No.   13-FA-1865
5                                      )
     MICHAEL KALSCHEUER,               )
6                                      )
                    Respondent.        )
7    *      *      *      *      *      *      *      *      *      *      *      *

8              TRANSCRIPT OF MOTION HEARING PROCEEDINGS

9    commencing on the 24th day of April, 2017, at approximately

10                    9:58 a.m. before the

11            HONORABLE JUDGE FRANK D. REMINGTON

12

13

14   APPEARANCES:       LUANNE KALSCHEUER present with no counsel

15

16

17                      MICHAEL KALSCHEUER present with Attorney at
                        Law, GINGER MURRAY, Madison, Wisconsin

18

19

20

21

22   Reported by:                              COPY
     Colleen C. Clark, RPR
23   Official Court Reporter, Branch 8
     Dane County Circuit Court
24   215 S. Hamilton Street Room 4103
     Madison, WI 53703-3290
25
```

Please read all Shows, Discrimination conspiracy

1      time.

2                      THE COURT:  I understand.

3                      MS. KALSCHEUER:  I took that --

4                      THE COURT:  And I reflected on it.  And I

5      don't -- I don't hold that against you, Ms. Kalscheuer.

6      It just didn't occur to me that that -- my statement could

7      be perceived in the way you perceived it.

8                      MS. KALSCHEUER:  Well, sorry.

9                      THE COURT:  Well this is, as in life, and this

10     job's a learning experience and much of what I do as a

11     judge is interpersonal interaction with people and this

12     difficult situation that a family is in, I can appreciate

13     how you might have construed that in a way that you had

14     suggested.  I just wanted to say to you that it was never

15     intended to be a reflection on any kind of -- this case in

16     general.  I've said that in the past in a lighthearted way

17     of sending people off.

18     *I'm on Poverty Due to Judge Remic* Ms. Kalscheuer, I actually, even though I'm not

19     using it anymore, I do wholly believe that most people

20     would not want to come to court if they didn't need to or

21     had any other alternative.  It's not -- it's a financially

22     and emotionally draining experience.

23                      Now, your motion to modify the maintenance,

24     Attorney Murray has suggested that it should be dismissed

25     because you have not pled the threshold requirement that

1    there is a substantial change in circumstances warranting

2    the Court considering the request. Do you want to

3    elaborate on that, Attorney Murray?

4    MS. MURRAY: I would. Thank you, Your Honor.

5    As the Court may or may not recall, we were back here

6    before the Court, this would have been two hearings ago,

7    on October 29, 2015, on an issue of maintenance. And so I

8    went and pulled the exhibits from them to look at those

9    compared to the financial information Ms. Kalscheuer

10    offers now.

11    Back in October of 2015, Ms. Kalscheuer reported

12    income of $1,436 per month. She is now reporting $1,700

13    per month. So her income has actually gone up. In 2015,

14    she used the eight-page full financial disclosure

15    statement, so at that time we were aware of the fact that

16    she had $144,625 in her Associated Bank account, $111,493

17    in her McFarland account, and $24,551 in her Anchor IRA.

18    This time when she filed her motion, she didn't

19    plead that she has less money. She just wants more money.

20    She's actually making $264 a month more, according to her

21    financial report.

22    I do note that I think it was deliberate that

23    she used the short form. It's okay. A lot of litigants

24    do use the short form postjudgment, but the financial

25    disclosure statement that she sent to my client along with

*[Handwritten annotations appear on lines 15–22: "Inheritance"; "this was gone in 2015"; "Spent due to Michael taking $40,000 due"; "spent due to Michael taking $40,000 due"; "Sold Home"; "+ so did Michael Kalscheuer"; "None of the cash Remington says above hasn't existed since sold"; "It has been used due to Michael taking Maintenance of $24,000 due"]*

1    the motion was the eight page.  So she certainly knew that

2    the eight-page form was available, and the only reason I

3    think that's relevant is if we were going to have a

4    hearing, I would certainly want to know how much she still

5    has in her reserves.  But I don't think we need to have a

6    hearing because she's making more money now than she was

7    then.

8             I don't feel that I have to put this information

9    forth at this point, but I can tell you that my client's

10   financial disclosure statement back in 2015 reported a

11   total of $4,285 of income from both his main employer, GE,

12   and also the supplemental overtime work that he does --

13   not overtime, but the second job that he has at Sears as a

14   means of an offer of proof, I would tell you that if we

15   have to proceed today based on his recent pay stubs and

16   his earning information from Sears, he's now making $4,327

     *Michael + Ginger Staller in 2015*

17   a month or $41 more. *he was making less reason for*

18   *this is a lie*  So the net effect is Ms. Kalscheuer has an extra *his modification -*

19   $200 a month, and I just don't think that we should be

     *Lie*

20   here.  And I feel like it's just -- my client continues to

21   pay me.  I brought with me the fees in order to prepare

22   the 802.05 and to work with counsel last time, which there

23   were several significant conversations between then

24   counsel for Ms. Kalscheuer and myself.  The bill in

25   August, the month leading up to our hearing, was $1,038,

marriage, you've taken that. You've taken everything away from me. He has taken -- like I said he stated to me on Christmas night, I'm going to take everything away from you, including the children, and he has taken two of them away. So I'm telling you, this has got to stop.

And, Mike, right now you're in contempt of court, because I have payments that you've missed and that are late. So where you think this shouldn't be here is wrong. Okay? There are payments missed and late. I should not have a payment from March for $65 and wait a week later or three days later for the rest of it. Month of November, 2015, he never paid the $1,600. December, 2015, right after this, short $65. There's a list and it keeps going.

So I'm not sure where we're at on here that he doesn't make a lot of money, because he's been at GE a lot. And I would like a copy that he is working for GE and Sears also to the date. *wasn't accepted*

You have not -- I -- I really believe, Judge Remington, I mean, I think you're a good person, but I took that to heart. I think I have not been treated equally and fairly.

Forty years of marriage and I worked for that man on the farm 24/7. And I know there are legal documents stating if you work or if you're married for 40 years, you know, that's up to him to bring the income too. I've been

1    working 48 hours but they had to cut it off to 40 now.

2    So, Ginger, I do think this is to be heard.

3         THE COURT:  Okay.  Well Ms. Kalscheuer, again,

4    I'll just make one last comment and then we'll leave well

5    enough alone, but again, as to the comment that I made, I

6    apologize for making that comment.  To the extent that you

7    construed it as being an indication that I -- I had any

8    kind of personal feelings about what you were bringing to

9    the court.  I call them like I see them and then leave it

10   at that.

11        Now, I'll ask Ms. Murray if she has any

12   questions for you, but before we do that, I'm not here

13   today to consider Mr. Kalscheuer's alleged contempt for

14   not complying with earlier orders.  I don't know anything

15   about that.  That would be a motion for contempt and

16   appended to the motion for contempt would be the proof

17   that the Court ordered someone to do something and that

18   they did not do it, and then it works its way through the

19   system, actually in the Court Commissioner's Center to

20   have a hearing in which the person knows what he's accused

21   of doing or failing to do, and then a factual

22   determination is made as to whether what was done is in

23   compliance with the order.  This is your motion to modify

24   your maintenance payment.

25        As to the facts, some of what you told me are

1   issues that have been brought up at least as of the last

2   two occasions we've been together.  In particular, the

3   pension, the one that worked its way through, whether it

4   was the product of intimidation or the like or voluntarily

5   done was something that we've heard -- we've heard about

6   before. *Judge Remington New Michael*

    *was not making the correct paymeds amounts*

7                    Ms. Murray, do you have any questions you'd like

8   to ask Ms. Kalscheuer about whether there's been a

9   substantial change in circumstances?

10                  MS. MURRAY:  No, Your Honor.

11                  DIRECT TESTIMONY (cont'd.)

12  BY THE COURT:

13  Q   So let me just get to it.  I -- what exact -- setting

14      aside the contempt, or alleged contempt, setting aside the

15      property division and then the subsequent issues with

16      regard to property division --

17  A   Well I could be --

18  Q   What has been -- what has been the change that brings you

19      to the Court now?

20  A   What brings me to the Court, I mean, I'm lucky I pay my

21      mortgage.  I'm lucky I have two meals a day.  I'm lucky

22      that I can pay the bills as they come in because there are

23      times I'm three, four days late.

24  Q   So you said you're making less per hour, but I thought --

25      I agree, Ms. Murray pointed out you're actually making

| | | |
|---|---|---|
| 1 | | more gross. |
| 2 | A | I make probably 330 a week. Okay? That's probably what I |
| 3 | | make. And I think Ginger Murray and Michael should be |
| 4 | | raising their right hand too, under oath too as well. |
| 5 | | Because, like I say, I feel like I'm not being treated |
| 6 | | equally. Whether she's an attorney or not, she's speaking |
| 7 | | for him. *michael Never was under oath.* |
| 8 | Q | I don't know what that means. |
| 9 | A | That means you already asked me to be under oath. She's |
| 10 | | answering all these questions, which I'd like a copy of |
| 11 | | those too. I'd also like a copy of his taxes for 2015 and |
| 12 | | 2016, because I think there is some kind of discrepancy |
| 13 | | there that I need to show the IRS. |
| 14 | Q | I don't know what -- |
| 15 | A | Because he's claiming more than he's paying me a year than |
| 16 | | what I'm actually claiming. |
| 17 | Q | What does that have to do about whether you've had a |
| 18 | | substantial change in your circumstances that would |
| 19 | | warrant me considering your motion? I mean, it might be |
| 20 | | important to the other issues in the case and to your |
| 21 | | relationship but -- |
| 22 | A | Whether you think this is not contempt of court, that's |
| 23 | | what you can think, but when we're done with this and if I |
| 24 | | didn't gain anything in this, I'm going right down there |
| 25 | | and doing a contempt of form and I have that right. |

1. Q You do.

2. A I'm -- you know, Michael, you're here. When we started

3. this divorce, you have not once paid what you were

4. supposed to pay. You took it upon yourself to write me a

5. little sticky note for the next check. *Well, this is what*

6. *you're going to get this week.* This went on for four

7. years. He never once took it to Wisconsin until I brought

8. it to court saying, you know what, you have to do it the

9. right way, the law. He did not. He kept on doing his own

10. little numbers. Whatever he could give, he could give.

11. That's not true, Mike, because I know you're making a lot

12. of money. I know you're making at least 75,000 a year at

13. GE. So something's not coming out right. And go under

14. oath, Mike, and start answering some questions, because

15. this is contempt of court.

16. Q Okay.

17. A And, yes, I am doing some law stuff too by the way.

18. Q I'm sorry, what did you say?

19. A I am going to do some attorney law stuff, classes, and I

20. also am a guardian ad litem for the Wisconsin State Bar,

21. as you heard.

22. Q Okay. Is there anything else you'd like to tell me with

23. regard to whether I'll -- regarding Attorney Murray's

24. motion to dismiss your request to modify maintenance based

25. on the lack of substantial change in circumstances?

1      supplement or child support several times and they said

2      they couldn't do anything for me because the amounts are

3      coming through GE.  Okay?  So that's what they told me.

4      So there's nothing that they could show or do for me.

5              But I think Ginger Murray, attorney for Michael

6      Kalscheuer, that you might want to call them and ask them

7      why things are late and why they're missing.  So some of

8      the reasons why I can't make payments to things and why my

9      2016 tax -- property taxes are delinquent right now are

10     due to some of this.  And furthermore, I will, Ginger,

11     have something done on this too.  The court --

12             THE COURT:  We use -- Ms. Kalscheuer, we use

13     last names as a matter of formality.  It's Attorney Murray

14     or Ms. Murray, if you would, please.

15             MS. KALSCHEUER:  Whatever.  The court fees --

16             THE COURT:  I'm sorry, what did you say?

17             MS. KALSCHEUER:  I will have to just -- I'll

18     deal with it.  If you don't pay me, how do you think --

19     first of all, that's not how it works.  Usually it works

20     if somebody hires an attorney, you pay them.  So Michael,

21     you hired Ms. Murray, you should be paying her.

22             THE COURT:  Okay.  Is there anything else you'd

23     like to tell me?

24             MS. KALSCHEUER:  Not right now.  No.

25             THE COURT:  All right.  Let's then rule on the

1   invoking the Court's jurisdiction and how you do it and

2   when you do it for the relief you desire.

3           Now, I don't know that she's doing that out of

4   spite to get the last word and to drain the last penny

5   from you, Mr. Kalscheuer, or whether she's just not

6   thinking clearly and she's reaching out, because if it's

7   the latter, then sanctions don't really help the

8   situation, because sanctions, where a person sort of knows

9   what they're doing and overtrying it is a disincentive,

10  but that's an assumption, Ms. Murray, that there's an

11  intent and a design and a thought process to accomplish

12  it.

13          And, because I've had you folks in the courtroom

14  before and I think I know a little bit about your case and

15  going back to, you know, the first time, I think

16  Ms. Kalscheuer's struggling because of your financial

17  situation and you're not able to cope and you're lashing

18  out is to the only person or way you can, to

19  Mr. Kalscheuer, and I don't think this situation, because

20  of her sort of lack of understanding and perspective, is a

21  time to warrant today to shift those costs.

22          Now --

23          MS. MURRAY:  Your Honor, can I ask -- so last

24  time we were here, Ms. Kalscheuer had $275,000 in IRA

25  accounts and bank statements.

*this was a Lie RK*

1          MS. KALSCHEUER:  I did not.

2          THE COURT:  Ms. Kalscheuer, please don't

3     interrupt.

4          MS. MURRAY:  Relying on her financial disclosure

5     statement that was filed with the Court on 10/29/2015,

6     there were substantial assets.  I hear the Court

7     struggling, and I understand, on whether fees should be

8     awarded.  I also hear that you don't think that you're

9     going to do that today.  I wanted to remind the Court that

10    there were substantial assets available.

11         THE COURT:  Okay.  So here's what we're going to

12    do.  I'm not going -- I'm going to take your request again

13    under advisement.  It's sort of like the three strikes.

14         Look, Ms. Kalscheuer, you have the right to come

15    back to court, and I'm not going to close the courthouse

16    doors, but then there are going to be consequences.  So I

17    will take -- ΛΘ threat to my life from Judge Remington

18         MS. KALSCHEUER:  Consequences, meaning?

19         THE COURT:  That if you come back to court

20    without a proper factual basis that warrants the relief

21    that you're seeking under the law.  Now, you'd be well

22    served to hire a lawyer to get advice on whether you have

23    the facts to come back.  Like, for example, you say you

24    haven't gotten payments, I've never heard of a situation

25    where when someone has an income assignment through the

1. Wisconsin Trust Fund that a person doesn't get a payment,
2. because that's the whole purpose of having someone do
3. income assignments so I say that, look it, then you don't
4. have to worry about it, it just comes right out of your
5. paychecks, you're not going to be called into court for
6. contempt because the check is in the mail or lost or the
7. dog ate it.
8.         Now, it might be that -- is it possible,
9. Mr. Kalscheuer, that your income in a particular month
10. dropped so low, like you didn't work the whole month, that
11. there wasn't monies available?
12.         MR. KALSCHEUER:  No.
13.         THE COURT:  No?  I mean, if you were -- if you
14. were, like, not working in the -- if there's no money,
15. that could be one explanation.
16.         But what I'm saying to you, Ms. Kalscheuer, is
17. if you come back, just as an opportunity then to say that
18. I should look at it or that Mr. Kalscheuer should hire his
19. lawyer to prove the negative, then we're going to take up
20. the two requests for fees, and if I conclude that your
21. request is without a factual basis, then there will be --
22. then I will grant those motions for fees, not just on
23. today but on the earlier case.
24.         MS. KALSCHEUER:  Okay.  So --
25.         THE COURT:  You need to do your homework,

1 because if you had your lawyer, you'd be paying your

2 lawyer to do your homework. The lawyer would say,

3 Ms. Kalscheuer, as your lawyer, I'm not going to bring the

4 motion because there's no factual basis. Because you

5 don't have a lawyer doesn't mean that, you know, either I

6 should figure it out or Mr. Kalscheuer's lawyer should

7 figure it out. If you come back on a motion then and if

8 the Court concludes it doesn't have merit, then that's the

9 third strike, then we'll consider the -- your request for

10 fees.

11 I think one more time, because of the inability

12 to pay at least in terms of her liquid assets, even though

13 that might not be a factor in overtrial, I'm still

14 troubled about the perception I have of dealing with a

15 person who's consumed by some things not necessarily

16 reflecting a knowing manipulation of the system to impose

17 financial ruin on you, Mr. Kalscheuer.

18 I know it's strange for me to say these kinds of

19 things in front of a person, Ms. Kalscheuer, because you

20 might find them offensive, but in this case it's my

21 feeling as to the factual basis as why I'm denying their

22 request for -- to make you pay Attorney Murray's fees

23 today. Now, maybe I'm -- maybe I'm wrong and I've given

24 you the -- but I've given you the benefit of the doubt.

25 But to be forewarned is to be forearmed. If you're going

here.

THE COURT: Now, as to the sharing of financial information, Ms. Murray, isn't there -- there's a standard provision that the parties would be exchanging I think tax returns, don't they?

MS. MURRAY: Your Honor, I was just looking for that, since the request has been made. Thus far, I haven't find it -- found it. Sorry. I will keep looking, because sometimes they have specific requirements of schedules be included or schedules not being included or just being W-2s. I'm looking at the Marital Settlement Agreement, because it wasn't in the Findings of Fact, Conclusions of Law and Judgment of Divorce.

THE COURT: Mr. Kalscheuer, while she's looking, have you completed your 2016 taxes?

MR. KALSCHEUER: Yeah.

THE COURT: Do you use an accountant for that?

MR. KALSCHEUER: No.

THE COURT: You do it yourself?

MR. KALSCHEUER: TurboTax.

THE COURT: Have you finished your 2016 taxes --

MS. KALSCHEUER: I have.

THE COURT: -- Ms. Kalscheuer?

MS. KALSCHEUER: I have.

THE COURT: Did you do them yourself or an

1    accountant?

2              MS. KALSCHEUER:  Accountant.

3              THE COURT:  You used an accountant?

4              MS. KALSCHEUER:  Mm-hmm.

5              THE COURT:  I think a good idea is to exchange

6    your 2016 taxes.  Would you be willing to do that,

7    Mr. Kalscheuer, Attorney Murray?

8              MS. MURRAY:  Well let me answer your first

9    question, I don't see any clause in either the divorce

10   judgment or the Marital Settlement Agreement, and I'm

11   going to remind the Court that I was not involved in the

12   case at that time.  And Mr. Kalscheuer wasn't at the

13   hearing of the final judgment of divorce, which is an

14   issue we've taken up before.

15             As it relates to the financial exchange, Your

16   Honor, I -- I do think it is customary.  I think there's

17   actually a provision in the statute that requires that

18   they exchange their tax returns, and it's usually on the

19   day that the taxes are due or if there's an extension,

20   then the date of the extension.  So I do think that's a

21   reasonable approach to this.

22             Your Honor, I would also ask that Ms. Kalscheuer

23   have to do the full eight-page financial disclosure

24   statement if she's going to come back into court, because

25   the presentation that she's making that she can't afford

1    cable TV is inconsistent with the prior information

2    provided to the Court in 2015 that she had $275,000 in

3    savings accounts.

4             THE COURT:  Okay.  Here's what we're going to

5    do.  You both are just going to give each other a copy of

6    your taxes.  Just make a -- put them in the photocopy

7    machine and send a copy.  Have them to each other within

8    the next 20 days.

9             MS. KALSCHEUER:  So should I mail it to you or

10   to --

11            MS. MURRAY:  Yes.  You can send that to me and

12   I'll give that to Mike.

13            THE COURT:  Okay.  Second, Ms. Kalscheuer, I

14   thing it is a reasonable request, I'll impose it on both

15   parties, that if either party wants to come back to this

16   court on a motion to modify or a motion for contempt, both

17   parties should fill out the long-form financial disclosure

18   statement.

19            MS. KALSCHEUER:  I don't know how I received the

20   long form for him.  I don't know how.

21            THE COURT:  No matter.

22            MS. KALSCHEUER:  Okay.

23            THE COURT:  And in the future that provides,

24   because this has been a recurrent issue in this case

25   between the parties, just both of you will fill out the

STATE OF WISCONSIN     CIRCUIT COURT     DANE COUNTY
BRANCH 8

In re the dissolved marriage of:

Luanne M. Kalscheuer,

       Joint Petitioner-Wife,

Case No. 13 FA 1865

-and-

Michael L. Kalscheuer,

       Joint Petitioner-Husband.

## ORDER

WHEREAS, Joint Petitioner-Wife, Luanne M. Kalscheuer, filed a Motion to Modify Maintenance on April 3, 2017. Joint Petitioner-Husband, Michael L, Kalscheuer filed a letter on April 17, 2017 objecting to the Ms. Kalscheuer's motion, asking that it be dismissed, or, in the alternative, to reopen Mr. Kalscheuer's outstanding and properly pled Motion for Fees. This matter was heard on April 24, 2017 before the Honorable Frank D. Remington with the following appearances having been made: Joint Petitioner-Wife, Luanne M. Kalscheuer, appeared pro se and Joint Petitioner-Husband appeared by and through his attorney, Your Family Law Center, S.C., by Attorney Ginger L. Murray.

## FINDINGS

1. Ms. Kalscheuer failed to present evidence of a substantial change of circumstances as required by Wis. Stat. 767.56. *I have shown substantial evidence which keeps getting dismissed "Conspiracy",*

2. The Court considered Mr. Kalscheuer's request for fees based on Exhibits 1 and 2 offered at the hearing. The Court found the fees requested to be reasonable and necessary for Mr. Kalscheuer's representation. *The Court. Judge Remington - is a one Sided - Discrimination against Luann Kalschu*

3. The Court addressed Ms. Kalscheuer's Motion asking the court to be substituted. For reasons stated on the record, the Court found no reason for recusal. *• ,*

## ORDER

For the reasons stated herein and described in more detail on the record,

IT IS ORDERED ~~Kalscheuer's Motion to Dismiss filed on the Luanne Kalscheuer~~ ~~dismissed as she failed to present evidence of a~~ substantial change of circumstances as required by Wis. Stat. 767.56.

*This paper of Judge Remingto proves he is, not for a woman. all papers show michael Kalscheuns were granted 1/4 were call dismissed - LK*

**IT IS FURTHER ORDERED** that Ms. Kalscheuer's request for substitution of Judge is denied.

**IT IS FURTHER ORDERED** that Mr. Kalscheuer's Motion for Fees is held open. *waive*

**IT IS FURTHER ORDERED** that Mr. Kalscheuer's Motion pursuant to Wis. Stat. Sec. 802.05 is held open.

**IT IS FURTHER ORDERED** that both parties are to exchange state and federal tax returns for last year within 20 days. *this is why I had michael Kaschu in contempt*

**IT IS FURTHER ORDERED** that if either party returns to court, each party should complete the long-form financial disclosure. A hearing on a future motion regarding support will not be set until the long-form financial disclosure statement is filed by the moving party, and both parties shall file the long-form financial disclosure before the hearing.

**IT IS FURTHER ORDERED** that parties must exchange future tax returns each year within 30 days of filing those returns.

*Judge Remington said it was ok that Michael Kaschu did not give me his tax Returns & Finacial Statments they Both were huding michael's income & Expense—*

Dated this 1st day of June, 2017

**BY THE COURT:**
Electronically signed by Frank D Remington
Circuit Court Judge

*michael has enough income to pey $30,000.00 a year — ok*

FILED
05-25-2018
CIRCUIT COURT
DANE COUNTY, WI
2013FA001865

STATE OF WISCONSIN     CIRCUIT COURT     DANE COUNTY

BRANCH 8

*In re the marriage of:*

LUANNE M. KALSCHEUER,

Joint Petitioner-Wife,

-and-

MICHAEL L. KALSCHEUER,

Joint Petitioner-Husband.

Case No. 13FA1865

Divorce: 40101

## SEPARATE JUDGMENT FOR ATTORNEY FEES

The Court finds that Joint Petitioner-Husband, Michael L. Kalscheuer, who resides at 4705 Ice Pond Drive, McFarland, WI, is entitled to the total amount of $12,051.30 representing the reasonable and necessary fees, costs, and disbursements, as ordered in the Findings and Order on Overtrial, in this action and finds Joint Petitioner-Wife, Luanne M. Kalscheuer, responsible therefore; and that her address of record is 5873 Holscher Road, McFarland, WI 53558.

Judgment is therefore rendered for $12,051.39 in favor of Joint Petitioner-Husband, Michael L. Kalscheuer and against Luanne M. Kalscheuer until paid in full.

Judge Remington - even though
I am in poverty he thinks I
should pay Michael attorny Fees.
Please Marital Status Agreement -
where Both are to pay their own
attorny Fees - throughout Divorce -
on going - Per Attorney Marly n
Pregler

Verona, WI -